## Commonwealth, for Use and Benefit of City of Hazard, v. Kelley.

(Decided May 28, 1929.)

J. K. POLK TURNER and J. W. CAMMACK, Attorney General, for appellant.

MOORE & SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLAY.—Certifying the law.

Ordinance No. 10 of the city of Hazard imposes upon every person operating a taxicab or bus for hire

on the streets of the city a license tax of $100. It further requires that every person engaged in the taxi business shall carry public liability insurance in the sum of $5,000 on each automobile used in the service, and provides that no license shall be issued until such insurance be obtained.

Several taxicab operators residing and having their stations outside the city limits were proceeded against in police court for doing business in the city without having complied with the ordinance. Fines were imposed, and they prosecuted an appeal to the Perry circuit court. That court held the ordinance invalid on the ground that the city was without authority to require liability insurance. From a judgment in favor of Robert Kelley, this appeal has been prosecuted for the purpose of having the law certified.

Though a city cannot exact a license fee or tax of nonresidents who merely pass through the city, it can require nonresidents who carry on a taxi business within the city to pay such license fee or tax. Young & Jones v. Town of Campbellsville, 199 Ky. 284, 250 S. W. 979; Sistrunk & Co. v. City of Paris, 205 Ky. 835, 266 S. W. 656. Though it be true that Kelley and the other members of the class to which he belongs reside and have their taxi stations outside the city, we do not gather from the record that their sole business consists in carrying passengers through the city from points outside the city, but that they are actually engaged in doing business in the city. That being true, they are subject to whatever fees and regulations that the city may impose upon taxicabs doing business wholly within the city. Bates v. Mobile, 46 Ala. 158; Loges v. City of Louisville, 141 Ky. 367, 132 S. W. 565. It is argued on behalf of Kelley that the city is without power to require liability insurance as a condition precedent to obtaining a license. In this connection our attention has been called to subsection 15, section 3490, Kentucky Statutes, giving to the board of council the following power:

"To license, tax and regulate wagons, drays, hacks and all kinds of vehicles and livery stables, pork houses, exchange offices, telegraph offices, insurance offices, or the agents keeping the same;

express offices, or agents of the same; real estate agents, hotels, taverns, restaurants, clubs, public boarding houses entertaining transient guests, or other houses or public resort or entertainment; or any other business or occupation licensed or taxed by the state; and to license and tax any carrier of passengers or freight for hire within the city.''

It is suggested that, while the board of council is given the power to license, tax, and regulate wagons, drays, hacks, and all kinds of vehicles and livery stables, etc., it merely confers the power to license and tax any carrier of passengers or freight for hire within the city. In the same connection it is argued that the power to tax does not carry with it the power to regulate, and that the ordinance in question is a mere taxing measure, because it provides that the revenue therefrom shall go into the general fund to be used for street purposes. It must not be overlooked that the power of a municipal corporation to grant licenses and impose fees or taxes may be conferred on it to be exercised either under its police power for purposes of regulation, or under its power of taxation for purposes of revenue, or to be exercised under both the police power and the taxing power. If both powers exist in relation to a specific public interest, it is immaterial whether the particular enactment is under one or the other or both. 37 C. J. 177; Bradley v. Richmond, 227 U. S. 477, 33 S. Ct. 318, 57 L. Ed. 603; Simrall v. Covington, 90 Ky. 444, 14 S. W. 369, 12 Ky. Law Rep. 404, 9 L. R. A. 556, 29 Am. St. Rep. 398.

As the specific power is given to license, tax, and regulate wagons, drays, hacks, and all kinds of vehicles, or any other business or occupation licensed or taxed by the state, and as a taxi or bus is a vehicle similar to wagons, drays, and hacks that are used for hire, and the business of operating a taxi is one licensed or taxed by the state, it would seem that the statute gives express authority to regulate; but, if we should go further and hold that the last provision of the act respecting carriers of passengers or freight for hire is controlling, we think its language is broad enough to carry with it the power of regulation. Of course, the power to tax does not carry with it the power to regulate, but the power both to license and tax carries with it the full authority to de-

termine the extent to which it is advisable and necessary to exercise such power, and to prescribe the conditions on compliance with which the occupation or privilege will be permitted. Purvis v. Ocilla, 149 Ga. 771, 102 S. E. 241; Douglass v. Greenville, 92 S. C. 374, 75 S. E. 687, 49 L. R. A. (N. S.) 958. There is nothing in Ky. St. Supp. 1928, section 2739j27a, that limits the power of a municipality to regulate taxicabs or busses in the circumstances here presented. Though the revenue derived from the ordinance in question is assigned to the general fund, that fact is not conclusive of the character of the ordinance. It not only exacts a license tax, but goes further and contains numerous provisions of a regulatory character. In the circumstances, it is both a taxing and police measure.

The only other question to be determined is whether the requirement of liability insurance is a valid exercise of the police power. Common experience has taught us that the operation of a bus or taxi is attended with great danger. Accidents are frequent, and a passenger may be injured or killed at any time. Often the owner of a taxi is not financially responsible, and, unless he carries liability insurance, the injured passenger will be deprived of adequate redress. Not only so, but the necessity of procuring and carrying insurance will have a tendency to make the operator more careful in the conduct of his business. As the requirement of liability insurance is in furtherance of the public safety, the situation is one where the rights of the individual will have to give way to the higher rights of the public. We therefore rule that the requirement is not an unreasonable exercise of the police power, and such is the view of the courts that have had occasion to pass on the question. Auto Transit Co. v. City of Fort Worth (Tex. Civ. App.) 182 S. W. 685; Houston v. Des Moines, 176 Iowa, 455, 156 N. W. 883; Lutz v. City of New Orleans (D. C.) 235 F. 978; City of Memphis v. State of Tennessee, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 597.

Wherefore this opinion is certified as the law of the case.